UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MISSOURI

EASTERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| GERALD R. CARROLL, | 4:00-CV-00864-UNA |
| Plaintiff, | |
| -vs- | MEMORANDUM OPINION AND ORDER |
| MICHAEL SISCO, KEITH COLEMAN, MICHAEL MCCANN, BRIAN DOLAN, JERRY LEYSHOCK, St. Louis City and County Police Officers and Detectives in their Official and Individual Capacities, CITY OF ST. LOUIS POLICE DEPARTMENT, RONNIE HENDERSON, Police Chief, in his Individual and Official Capacities, HARRY HEGGAR, Police Captain, in his Individual and Official Capacities, ST. LOUIS COUNTY, and JOHN DOE, St. Louis County Police Chief, in his Individual and Official Capacities[1], | |
| Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff, a prisoner at the United States Penitentiary in Greenville, Illinois, instituted this action pursuant to 42 U.S.C. §§ 1983 and 1985, seeking damages for alleged constitutional violations in conjunction with his arrest on July 30, 1998, for armed robbery. Plaintiff was subsequently convicted of that crime and his conviction was affirmed on appeal. United States v. Carroll, 207 F.3d 465 (8th Cir. 2000). All outstanding motions to set aside or correct the sentence pursuant to 28 U.S.C. § 2255, have been resolved against the plaintiff. Carroll v. United States, No. 4:01-cv-0396 (E.D. Mo. Jan. 1, 2003).

---

[1]The Honorable Rodney W. Sippel set forth the correct case caption in his order granting, in part, plaintiff's motion to file a second amended complaint, Doc. # 66. The caption is amended to reflect the dismissal of parties as provided in Docs. # 90 and 226.

I have exhaustively outlined plaintiff's claims in prior orders, and by now they should be clear to all parties (Docs. # 121 and 228). Each of the motions decided in this order stem from my memorandum opinion and order filed March 16, 2010 (Doc. # 228). As a result of that order, plaintiff's remaining claims are 1) that St. Louis County police officers used excessive force in affecting the arrest of plaintiff on July 30, 1998; 2) that St. Louis City police used excessive force in failing to alleviate the effects of pepper spray and in acting in deliberate indifference to plaintiff's serious medical needs; and 3) that the St. Louis County and the St. Louis City police defendants conspired to violate plaintiff's rights, in violation of 42 U.S.C. § 1985(3). Plaintiff has filed motions for this court to reconsider its grant of summary judgment in favor of University City defendants (Doc. # 232) and St. Louis City defendants (Docs. # 233, 234). Plaintiff also filed two motions to compel discovery (Docs. # 250, 258), a motion to produce documents requested by the plaintiff (Doc. # 244), a motion to reconsider this court's denial of plaintiff's prior motions to compel and to subpoena (Doc. # 257), and requests to reconsider denial of appointment of counsel (Doc. # 240, 257). Defendants Michael Sisco, Keith Coleman and Michael McCann filed a motion to reconsider this court's denial of summary judgment disposing of plaintiff's claims against them (Doc. # 229). Defendants Brian Dolan, Charles Johnson, Jerry Leyshock, Harry Hegger, Ronnie Henderson, and the St. Louis Board of Police Commissioners filed a motion to grant summary judgment on all of plaintiff's claims against them (Doc. # 230). Procedural motions to extend time to file reply suggestions (Doc. # 238), respond to plaintiff's motions to compel (Docs. # 252, 253), and to respond out of time to plaintiff's motion for reconsideration (Doc. # 261) were also tendered by St. Louis City Police Department defendants.

## DECISION

### 1. Standard of Law

Summary judgment is proper if, "after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." Hayek v. City of St. Paul, 488 F.3d 1049, 1054 (8th Cir. 2007). The moving party "bears the burden of showing both the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law." Nyari v.

2

<u>Napolitano</u>, 562 F.3d 916, 920 (8th Cir. 2009) (*quoting* <u>Singletary v. Mo. Dep't of Corr.</u>, 423 F.3d 886, 890 (8th Cir. 2005)). Additionally, a nonmoving party's failure to establish any element essential to his or her claim, to which he or she has the burden of proof, "necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." <u>Landon v. Nw. Airlines, Inc.</u>, 72 F.3d 620, 634 (8th Cir. 1995).

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stores, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (internal quotations and citations omitted). As plaintiff and defendants have filed affidavits in support of their respective motions, this court must determine whether the affidavits allege facts that would render the testimony admissible should they allege new facts. Fed. R. Civ. P. 56(c)(4).

**2. Motions to Reconsider**

Both plaintiff (Docs. # 232, 233, 234, 250, 257, 258) and defendants Michael Sisco, Keith Coleman, and Michael McCann (Doc. # 229) have filed motions to reconsider various particulars of that order. After my stern admonition on the futile and wasteful use of motions to reconsider (Order, Doc. #174), these parties brought motions to reconsider that merely reiterate factual and legal contentions they articulated in earlier arguments. While this court has nonetheless analyzed these motions to reconsider, it is important to restate my earlier warning.

To reiterate, "[a]ggrieved parties in bench trials should not file motions labeled 'motion for reconsideration' in federal district court. *The Federal Rules of Civil Procedure do not provide for such a motion*." *In re* Trout, 984 F.2d 977, 978-79 (8th Cir. 1993) (emphasis in original). Instead, parties must properly designate such motions as made under a particular rule authorizing the motion. *See id.* Both plaintiff and defendants Sisco, Coleman, and McCann failed to gird their "motions to reconsider" with any reference to a Federal Rule of Civil Procedure (FRCP) that would permit the filing. Even still, if a party brought a "motion to reconsider" under a valid interpretation of the FRCP, "[s]uch motions are frequently a waste of time for both the parties and the trial court." Wilkins v. Hartford Life & Accident Ins. Co., 299 F.3d 945, 948 (8th Cir. 2002).

A. Plaintiff's Motion to Reconsider the Grant of Summary Judgment in Favor of University City Defendants

Plaintiff makes three arguments to reconsider this court's grant of summary judgment in favor of University City defendants (Pl.'s Mot. for Recons., Doc. # 232). First, he contends this court failed to consider his third motion to amend. Second, plaintiff makes his sole substantive argument by contending that the University City defendants are still liable for deliberate indifference because, while injured and deliberately kept from necessary health care, he was in the custody of University City police by mere operation of University City's facilitation of a "show-up" and presence at the scene of plaintiff's arrest. Finally, he finds improper this court's grant of summary judgment in the face of discovery requests he feels are still outstanding with regard to the University City defendants.

On this first argument, I clearly denied plaintiff's third motion to amend his complaint in my order on motions, where I noted that the amended language plaintiff requested would not create any cognizable claim against the three officers (Doc. # 226). The basis for this finding is straightforward. It is the prerogative of a judge to not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), nor "blindly accept" legal conclusions drawn by the pleader from the facts alleged. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The only factual allegation the plaintiff made on this matter is that the three University City police officers allegedly drove witnesses to the

4

plaintiff's location for the purpose of a show-up (Mot. Am. Compl., Doc. # 170, Ex. 2, ¶ 42). Other than this statement, plaintiff, in subsequent filings, made only conclusory statements of being in University City's "joint custody" at the time of the show-up (Pl.'s Aff. Supp. Mot. for Recons., Doc. # 246, ¶ 7; Pl.'s Mot. For Recons., Doc. #232, ¶ 2).

The actions of these three University City police officers transporting witnesses, by this court's analysis of the law, does not entail custody over the plaintiff, whether constructive, joint or otherwise. In the context of an arestee requiring medical attention, "when the state takes a person into custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." Spencer v. Knapheide Truck Equip. Co., 183 F.3d 902, 905 (8th Cir. 1999). A suspect is in custody when a suspect is deprived of his freedom of action in any significant manner. United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990) (*quoting* Berkemer v. McCarty, 468 U.S. 420, 427 (1984)). Again, according to the facts provided by plaintiff, Officers Dunn, Allen and Haftarczyk only transported witnesses from the bank to the show-up. A rational trier of fact could not find that transporting witnesses constitutes custody–i.e., the physical holding and deprivation of plaintiff's liberty. Accordingly, my denial of plaintiff's third motion to amend the complaint stands.

The fate of plaintiff's second argument rests on whether any other University City police officers remaining at the scene of his arrest had "joint custody" over his person. Taking the plaintiff's contention that there were University City police at the scene of his arrest and detention as fact, plaintiff must still show that University City police had such custody or control over the plaintiff for his deliberate indifference claim to survive summary judgment. *See* Spencer, 183 F.3d at 905. Plaintiff argues that University City had "joint custody" over his person during his period of detention at the scene. Courts in the Eighth Circuit mention "joint custody" associated with an arrest only twice. The court in Wilson v. Spain, 209 F.3d 713, 715 n.2 (8th Cir. 2000), mentions the distinction between joint and sole custody only in passing. The only case providing sufficient information for discussion of the subject is Buckner v. Hollins, 983 F.2d 119, 122 (8th Cir. 1993). This case involved the transfer of a recently sentenced inmate between two different institutions of two separate jurisdictions: JCDC and FRDC. *Id.* at 120.

5

After the inmate was transferred to the FRDC, a JCDC jailer returned to FRDC multiple times for the purpose of obtaining the clothing and restraints belonging to JCDC that were still on the inmate. *Id.* The inmate brought a § 1983 suit contending that the JCDC jailer used these pretexts to repeatedly assault the inmate while he was incarcerated at the FRDC. *Id.* Though the FRDC jailer with authority over the inmate's cell claimed that he did not have custody over the inmate based upon an absence of a statutorily defined confirmation of prisoner transfer from the Missouri Department of Corrections, the Eighth Circuit found that the FRDC jailer nevertheless had a duty to intervene on the inmate's behalf. *Id.* at 121-22. The court, spurning the statutory definition of custody, noted that the FRDC jailer had the only key to Buckner's cell, meaning custody had been effectively transferred to FRDC. *Id.* at 122. This "practical reality" was sufficient for the court to determine that FRDC had at least joint custody with the JCDC over the inmate. *Id.*

Plaintiff cites case law appealed to the Sixth Circuit to support his argument. Harris v. City of Circleville, No. 2:04-cv-1051, 2008 WL 211363 (S.D. Ohio Jan. 23, 2008). This case, however, harms plaintiff's claim far more than it helps. Indeed, at least half of the "factors" which plaintiff contends were the basis of the court's determination of joint custody in Harris (Mem. Supp. Mot. for Recons., Doc. # 251 (*quoting* Harris v. City of Circleville, 583 F.3d 356, 363, 370 (6th Cir. 2009))), are not present in this controversy. According to the facts alleged by the plaintiff, no University City police officer handcuffed the plaintiff or directly interacted with the plaintiff during the period of his arrest and detainment at the scene. This distinguishes these circumstances from two of the four factors which plaintiff contends the Harris court found as sufficiently determinative of joint custody. Moreover, the Harris court emphasized the role of the arresting officer and the fact that such officers have continuing duties to their arrested suspect, finding that the "Fourth Amendment's protections extend 'throughout the time the person remains in the custody of the arresting officers.'" Harris, 2008 WL 211363, at *5 (*citing* McDowell v. Rogers, 863 F.2d 1302, 1306 (6th Cir. 1988)). University City police officers did not participate in plaintiff's arrest. The "practical reality" was that University City did not have physical custody of the plaintiff at any point during plaintiff's arrest and detention at the scene. Plaintiff was held within a locked St. Louis City Police Department vehicle and it was St. Louis

6

City Police Department personnel that allegedly turned away medical services and refused to uncuff plaintiff when administering water to plaintiff's eyes.

Noting that plaintiff's reliance on the Sixth Circuit's decision in Harris is unsupported in this controversy and that Eighth Circuit law stands against his assertion of joint custody, this court cannot, as a matter of law, find that any University City defendant had custody of the plaintiff. Since custody is an essential part of the claim of deliberate indifference, plaintiff's claim against the University City defendants as a whole must be denied. Accordingly, I reaffirm the grant of summary judgment in favor of the University City defendants.

Since plaintiff's claim of deliberate indifference against the University City defendants fails in its entirety, there is no reason to compel further discovery from any University City defendant. As a result, plaintiff's motion for reconsideration (Doc. #232) should be denied in full.

B. Plaintiff's Motion to Reconsider the Grant of Summary Judgment in Favor of St. Louis City

In response to this court's grant of summary judgment dismissing all of plaintiff's claims against St. Louis City, plaintiff argues he still has a claim against the City and that summary judgment is premature on account of his multiple outstanding discovery requests with the City. While this is fundamentally the same argument I rejected in my order (Doc. # 226), plaintiff does clarify his position by arguing that a 42 U.S.C. § 1983 municipal liability claim is still viable against the City so long as the city conspired with St. Louis police officers to deprive plaintiff of his rights, and discovery is necessary to show the extent of this conspiracy (Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. Recons., Doc. # 249).

Ultimately, whether plaintiff's claim survives depends upon whether the factual allegations made in his amended complaint and affidavits, taken in a light most favorable to him, provide an issue of material fact for a reasonable factfinder. *See* Scott, 550 U.S. at 380. The law clearly provides that claims against the City are not viable "to the extent [they] are based on an alleged failure properly to [sic] train, monitor, or supervise St. Louis police officers." Ford v. St. Louis. Metro. Towing, L.C., No. 4:09-cv-0512, 2010 WL 618491, at *18 (E.D. Mo. Feb. 18, 2010). Such responsibilities to train, monitor, and supervise are grounded in the doctrine of

respondeat superior, which is an unrecognized theory under § 1983. Beene v. City of St. Louis, 2009 WL 5103268, at * 3 (*citing* Hughes v. Stottlemyre, 454 F.3d 791, 798 (8th Cir. 2006)). In paragraph 61 of the amended complaint, plaintiff contends that the City has "permitted, encouraged, tolerated and ratified a pattern and practice" of excessive force. Paragraph 62 alleges that the City "has maintained either no system or an inadequate *system of review* of the use of force" by officers (emphasis added). Paragraph 63 contends police have received "inadequate *training*" (emphasis added). Clearly, paragraphs 62 and 63 must be dismissed as claims derived from a theory of respondeat superior unrecognized by § 1983 as these claims invoke the City's alleged inability to train, monitor, or supervise.

However, paragraph 61 of the amended complaint describes plaintiff's claim of a conspiracy between St. Louis City and its Police Department to deprive plaintiff of his civil rights in violation of § 1983. This court has joined others in supporting the proposition that a "continuing, widespread, persistent pattern of unconstitutional misconduct" may trigger a § 1983 remedy even if there is no formal policymaking relationship between the governmental entities accused of acting to deprive a plaintiff of her civil rights (Order, Doc. # 160, pp. 5-6, *citing* Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978); Johnson v. Bd. of Police Comm'rs, 370 F. Supp. 2d 892, 902 (E.D. Mo. 2005)). Thus, plaintiff's bare assertion in paragraph 61 of the second amended complaint (Doc. # 68) may at least in theory survive summary judgment as it alleges facts sufficient to state a claim that it "permitted, encouraged, tolerated and ratified" the unreasonable use of force employed by the St. Louis police department. Nevertheless, in order to survive summary judgment on this point, the facts derived from the complaint and affidavits taken in the light most favorable to plaintiff must establish the prerequisite requirement that the plaintiff was initially subject to excessive force or deliberate indifference by the St. Louis Police Department. Since both "excessive force" and "deliberate indifference" are defined by law and courts are not bound to blindly accept legal conclusions, this court will now determine whether the facts are sufficient to meet the claims averred by plaintiff, and therefore implicate the City of St. Louis. *See* Westcott, 901 F.2d at 1488.

C. Defendants' Motion to Reconsider the Partial Denial of Their Summary Judgment Motions

8

The basis of the motion to reconsider by defendants Michael Sisco, Keith Coleman and Michael McCann necessarily implicates all defendants in this controversy, as it argues that the one outstanding order to compel discovery is sufficiently addressed and that no excessive force or deliberate indifference occurred in plaintiff's arrest and detention as a matter of law. On the outstanding discovery issue, defendants contend that they are unable to obtain plaintiff's medical records from the Normandy Medical Center or from any successor entity that might still hold Normandy's records. In their motion to reconsider, defendants seem to blur their arguments against further compelled discovery of this material with their arguments that no excessive force occurred as a matter of law.

The need for further discovery regarding plaintiff's medical records and plaintiff's claims of excessive force are closely related. Admittedly, this court could be somewhat frustrated by the defendants' failure to obtain plaintiff's medical records, for which–contrary to defendants' arguments–they have much of the responsibility to obtain, considering plaintiff's substantial lack of resources. However, this court acknowledges that defendants have taken substantial steps to obtain plaintiff's records (Docs. # 229, 254, 256). Moreover, this court acknowledges that Des Peres Hospital, the custodian of plaintiff's records after Normany Medical Center closed, destroyed plaintiff's medical records from his July 30, 1998, visit (Doc. # 256, Ex. 1). The destruction of these medical records after ten years is in keeping with Mo. Rev. Stat. § 516.105.

Ultimately, this court is not convinced that the medical records are necessary to properly dispose of the excessive force claim relating to the arrest. The purpose of obtaining plaintiff's medical records is to ascertain the scope of injury caused by defendants in apprehending and detaining the plaintiff. However, the Eighth Circuit has made it clear that in § 1983 claims brought on excessive force grounds, "[t]he extent of the injury may . . . provide some indication of the amount of force applied," but that "[i]njury and force are only imperfectly correlated." Chambers v. Pennycook, 641 F.3d 898, 906 n.2 (8th Cir. 2011) (*quoting* Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010)). Indeed, the U.S. Supreme Court has gone even further to state that "[i]t is ultimately 'force' that counts, rather than the injury." Wilkins, 130 S. Ct. at 1178. Thus, while the extent of plaintiff's injuries is potentially one factor in determining force, it is by no means necessary, or even dispositive. Regardless, this court must take the facts in a light most favorable to the plaintiff. Thus, the full extent of plaintiff's alleged injuries will be weighed by

9

this court. Plaintiff alleges that he received cuts to his face, neck and chest. He also alleges that he was hit in the face by law enforcement, resulting in a broken nose. Finally, plaintiff states that he was sprayed with pepper spray. According to the facts provided by plaintiff, these injuries were all initially sustained incidental to plaintiff's arrest, and the Eighth Circuit's decision in plaintiff's criminal case states likewise. Carroll, 207 F.3d at 472.

Plaintiff contends that he did not resist his captors. The district court and the Eighth Circuit found otherwise. *Id.* at 470, 472. Indeed, it was this finding of resisting arrest that was the crux of the Eighth Circuit's determination that plaintiff's admission was not involuntary. *Id.* at 472. Specifically, the Eighth Circuit's voluntariness analysis concluded that the police did not physically extract a confession from the defendant because the police "were *required to use*" that amount of force "to subdue a fighting suspect" which ended after the suspect was under control. *Id.* (emphasis added). For this court to find that plaintiff did not resist arrest and that police went beyond the force needed to apprehend the plaintiff, as plaintiff states in his claimed facts, this court must invalidate the single basis given by the Eighth Circuit for rejecting plaintiff's contention that his admission was involuntary. *Id.*; *see also* Brown v. Miss., 297 U.S. 278, 285-86 (1936) ("[The trial] is a mere pretense where the state authorities have contrived a conviction resting solely upon confessions obtained by violence."). Thus, while the issues between this case and plaintiff's criminal case are not exactly identical–the criminal case clearly adjudicated that the use of force was permissible under a Fifth Amendment analysis, while this case utilizes a Fourth Amendment analysis–a determination that excessive use was utilized by defendants in the arrest would directly contravene the Eighth Circuit's ruling that defendants were required to use that degree of force against the plaintiff. Carroll, 207 F.3d at 472. The Eighth Circuit said as much in Simmons v. O'Brien, 77 F.3d 1093, 1097 (8th Cir. 1996), in which the court denied an excessive force claim where a plaintiff alleged that "excessive force was used against him and that such force was 'intentionally used to coerce [p]laintiff into confessing.'" This language clearly parallels ¶ 29 and Count I of plaintiff's second amended complaint (Doc. # 68). Any determination that police used excessive force in arresting the plaintiff would necessarily imply the invalidity of the plaintiff's prior criminal conviction, as the admission of the gun's location likely would be deemed the fruit of an unreasonable seizure (see N.Y. v. Harris, 495 U.S. 14, 19 (1990)), and the evidence so suppressed would likely create significant grounds to invalidate his

10

conviction. *See* Carroll, 207 F.3d at 471-72. For this reason, plaintiff's § 1983 claim based upon excessive force must be dismissed as a matter of law. Humphrey v. Heck, 512 U.S. 477, 487 (1994).

As a matter of law, if the amount of force utilized by the defendants was not so excessive as to imply the invalidity of plaintiff's conviction, it cannot be so excessive as to violate plaintiff's civil rights under § 1983. Without the requisite showing of a constitutional violation, summary judgment is proper because plaintiff has failed to establish the existence of an essential element of his case. Defendants Michael Sisco, Keith Coleman and Michael McCann's motion to reconsider in part this court's memorandum opinion is hereby granted (Doc. # 230). Similarly, St. Louis County defendants' motion to reconsider this court's denial of summary judgment in favor of plaintiff (Doc. # 229) should be granted in part, and their motion for summary judgment should be granted in part (Docs. # 190, 193).

Finally, plaintiff claims that defendants exhibited excessive force in permitting plaintiff's prolonged exposure to pepper spray after his arrest. As I noted earlier, Ninth Circuit precedent holds that prolonged exposure to pepper spray may constitute excessive force. LaLonde v. Cnty of Riverside, 204 F.3d 947, 961 (9th Cir. 2000). In that case, the court found that "any reasonable officer would know that a continued use of the [pepper spray] or a refusal without cause to alleviate its harmful effects constitutes excessive force." *Id.* The court went further, noting that allowing a plaintiff to suffer the effects of pepper spray after he had fully surrendered and was under police control "constituted excessive force" whether plaintiff's face burned for "ten minutes or half an hour" after detained. *Id.* at 960 n.18. Plaintiff contends that the pepper spray caused a severe burning sensation in his eyes for an undetermined period of time. Moreover, plaintiff contends that his eyes were swollen shut as a result of the effects of the pepper spray and broken nose, until treated at the hospital ninety to one-hundred twenty minutes later. In affidavits, both plaintiff and defendants agree that plaintiff was given water by Officer Leyshock for the purpose of washing the pepper spray out of plaintiff's eyes. No party provides a definite timeline as to when Officer Leyshock provided the water to plaintiff. However, plaintiff alleges that Officer Leyshock splashed warm water onto his eyes, exacerbating the pain caused by the pepper spray. Thus, with the facts taken in a light most favorable to the plaintiff, while Officer Leyshock did attempt to flush plaintiff's eyes, this act allegedly intensified the pain

11

which lies at the heart of the excessive force claim for prolonged exposure to pepper spray. *See* LaLonde, 204 F.3d at 961. Moreover, plaintiff accuses St. Louis City police officers of turning away the ambulance sent to treat him. Accordingly, I find that plaintiff's claim of excessive force survives summary judgment only as it relates to plaintiff's claimed prolonged and exacerbated exposure to pepper spray after plaintiff's arrest and immediate detention. Unlike the excessive force claim derived from the moment of arrest, resolving this claim in favor of the plaintiff does not place in doubt plaintiff's prior criminal conviction.

In summation, the only excessive force claim that survives is based upon Officer Leyshock's claimed attempt to flush plaintiff's eyes with warm water and a refusal to let medical personnel treat the plaintiff. Since St. Louis Police Department policy explicitly states that cold water must be promptly administered to arrestees subdued by pepper spray, the City of St. Louis and the St. Louis Police Department are not liable for a 42 U.S.C. § 1983 claim based on permitting excessive force as a matter of law. A claim against local government entities is sustainable only where a constitutional violation has been committed pursuant to an official custom, policy, or practice. Johnson v. Blaukat, 453 F.3d 1108, 1114 (8th Cir. 2006) (*citing* Monell, 436 U.S. 658, 690-91 (1978)). It is clear that St. Louis City police policy, specifically Special Order § V, 92-S-12, officially directs officers to promptly provide only cold water to flush out the eyes of those exposed to pepper spray. Since plaintiff does not allege that this policy is unconstitutional, instead claiming only the violation of the policy to be unconstitutional, plaintiff fails to allege any facts indicating that St. Louis City and the St. Louis City Police Department policy, practice, or custom resulted in the exacerbation of plaintiff's symptoms from pepper spray exposure. *See id.* Accordingly, summary judgment is appropriate for any claims of municipal liability and policy, practice, and custom claim based on any assertion of excessive force against the City of St. Louis and the St. Louis City Police Department.

**3. Additional Claims and Discovery**

A. The Scope of Liability for St. Louis County Defendants

Barring any claim of excessive force derived from the arrest, plaintiff's only remaining excessive force claim against St. Louis County defendants is that they were culpable in prolonging and exacerbating plaintiff's exposure to pepper spray. This contention is complicated by the fact that plaintiff was in the direct custody of the St. Louis City Police Department

12

beginning from the point at which plaintiff was placed in the police vehicle until plaintiff received treatment at Normandy Medical Center. Paralleling plaintiff's claim against University City, he argues that St. Louis City and County Police Departments shared joint custody by virtue of their combined arrest of the plaintiff and the continued presence of county police at the scene of plaintiff's arrest (Pl.'s Mem. Supporting Mot. Recons., Doc. # 251).

Applying the "practical reality" standard described above in Buckner to the facts taken in a light most favorable to the plaintiff, the plaintiff was detained within a vehicle of the St. Louis City Police Department for over forty minutes. St. Louis City Police Department Officer Leyshock administered warm water to plaintiff's eyes at some time soon after the arrest and refused to remove plaintiff's handcuffs when asked to do so by the plaintiff. Plaintiff was then guided by unnamed police officers to attend a one-man show up for twenty to thirty minutes. Around this time, according to plaintiff's affidavit, St. Louis City Officer Leyshock turned away the ambulance called to assist anyone injured at the scene. Taking these facts together, plaintiff is only able to specifically aver that St. Louis County assisted in the arrest, placing their handcuffs on the plaintiff, and that St. Louis County police were present at the scene until the plaintiff was transported to the hospital. The "practical reality" is that plaintiff was in the physical custody of the St. Louis City Police Department immediately after the point of arrest and without interruption until plaintiff's treatment. Thus, only the St. Louis City Police Department had custody of plaintiff during the time that plaintiff's exposure to pepper spray was allegedly prolonged and exacerbated.

Plaintiff claims as instructive the case of Harris v. City of Circleville, No. 2:04-cv-1051, 2008 WL 211363 (S.D. Ohio Jan. 23, 2008). As noted above, the Harris court found that the arresting officers had joint custody over the § 1983 plaintiff when the detaining officers, from a different jurisdiction, allegedly began assaulting the plaintiff. Plaintiff contends that four facts were determinative in the Harris court's finding that state troopers had joint custody: 1) that Mr. Harris was restrained by handcuffs placed by the troopers, 2) the troopers remained at the jail where booking–and the excessive force–allegedly occurred, 3) one of the troopers interacted with Mr. Harris while in the physical custody of the booking police, and 4) one of the troopers remained at the jail until Mr. Harris was taken to the hospital. Harris, 583 F.3d 356, 363 (6th Cir. 2009). Plaintiff is able to assert three of the four facts highlighted here, the exception being

13

that plaintiff could not specifically aver that St. Louis County police officers directly interacted with plaintiff after his arrest.  The basis in law of the Harris court's finding, however, was its categorical determination that Harris' Fourth Amendment right extends from the point of arrest "through the time the booking process is completed,"covering all excessive force claims that arise during that time.  *Id.* at \*6.  This categorical analysis vests the arresting officer, according to the Harris court, with a duty to intervene from the point of arrest until booking.

Not only does this categorical analysis directly conflict with the more fact dependent, circumstance-of-custody analysis of the "practical reality" standard of the Eighth Circuit, but the Harris situation is factually distinct from this case.  Unlike in Harris, physical custody of the plaintiff was transferred immediately after arrest and hours before any formal booking process could occur.  St. Louis County defendants only had physical custody of the plaintiff at the point of arrest, a very small portion of time relative to the full period that his Fourth Amendment rights applied, according to Harris.

For this reason, this court finds as a matter of law that St. Louis County defendants did not have joint custody over the plaintiff after the point of arrest.  Since the only remaining claim of excessive force occurred after St. Louis County gave up its joint custody of the plaintiff, plaintiff's claims of excessive force against St. Louis County defendants necessarily fail.

B.  Plaintiff's Claims of Deliberate Indifference

Deliberate indifference claims are analyzed under the Due Process Clause of the 14th Amendment.  Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir. 2007).  The plaintiff roots his deliberate indifference claim in alleging the detaining officers intentionally delayed medical treatment for plaintiff's pepper spray exposure, broken nose, and lacerations.  In the case of intentionally delaying medical treatment, deliberate disregard is shown "if a reasonable person would know that the [arrestee] requires medical attention or the actions of the officers are so dangerous that a knowledge of the risk may be presumed."  Gordon *ex rel.* Gordon v. Frank, 454 F.3d 858, 862 (8th Cir. 2006).  However, the reasonable person–placed in this case into the shoes of law enforcement at the scene of the arrest–"must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  McRaven v. Sanders, 577 F.3d  974, 981 (8th Cir. 2009) (*quoting* Farmer v. Brennan, 511 U.S. 825, 842 (1994)).  In other words, "'[d]eliberate indifference' entails a level

14

of culpability equal to the criminal law definition of recklessness," a very high threshold. Bender v. Regier, 385 F.3d 1133, 1137 (8th Cir. 2004). Such a showing requires the plaintiff to show that police officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would *clearly evince a wanton disregard* for any serious medical needs." Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), *cert. denied* 130 S. Ct. 3368 (2010) (emphasis in original). Plaintiff must show that defendants' actions in failing to provide plaintiff medical attention before he arrived at the hospital were objectively unreasonable and also that defendants intended the consequence of those actions. Wagner v. Bay City, TX, 227 F.3d 316, 324 (5th Cir. 2000). "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Jones v. Minn. Dep't of Corr., 512 F.3d 478, 481 (8th Cir. 2008).

Plaintiff alleges two instances of defendants' deliberate indifference. First, plaintiff asserts that arresting officers placed him into a police vehicle instead of taking him to receive medical care, holding him between ninety and one-hundred twenty minutes from the time of arrest to the time he received treatment at the hospital. Additionally, plaintiff contends that an ambulance arrived at the scene to take plaintiff to the hospital, but that Officers Leyshock, Fischer and Hegger–who "knew or should have known plaintiff was in need of serious medical treatment"–turned away the ambulance. While defendants acknowledge that an ambulance was indeed at the scene, defendants contend that it was plaintiff who voluntarily refused treatment. Additionally, defendant Leyshock avers, uncontroverted by plaintiff, that he was told by the emergency medical technicians (EMTs) who arrived at the scene that plaintiff was "fit to be transported to the hospital by other means" before they left. Plaintiff asserts that he now has poor vision in his left eye, necessitating the use of prescription glasses, and that he has a "constant throbbing or jumping" in his left eye.

The Eleventh Circuit heard a case with very similar claims. In King v. Reap, 269 F. App'x 857, 860-61 (11th Cir. 2008), King was stopped for running a stop sign. On suspicion of hiding contraband within his mouth, police utilized force to pry open his mouth while he was handcuffed. King accused the arresting officers of chipping his tooth, administering pepper spray to his eyes, breaking his ribs and causing head trauma and lacerations to his mouth–all in the

15

course of trying to open King's mouth to remove the baggie of cocaine lodged within. *Id.* at 858. The court noted that an ambulance was summoned by the arresting officers to provide medical treatment for the defendant after they extracted the contraband, but that these officers sent the ambulance away when it reached the scene, according to King's testimony, resulting in further delay in medical attention. *Id.* at 858, 861. The Eleventh Circuit found that these facts indicated a denial of prompt and proper medical care, indicating a clear violation of King's constitutional rights. *Id.* at 861. Noting that while the broken ribs would not be visible to a lay person, the court found that the "swollen and severely bloodshot eyes, . . . bruised eyes, lacerations in his mouth, . . ." were sufficiently apparent and that it was reasonable to suspect that such a person would need medical attention. *Id.*

Like Mr. King, plaintiff contends he exhibited swelling and blood on his face as a result of physical trauma associated with his arrest. The Eleventh Circuit found that such trauma is sufficient to provide visible proof of the need for care under a deliberate indifference analysis. Like Mr. King, plaintiff alleges that defendants called an ambulance, which would indicate someone's subjective belief that plaintiff needed care, but then denied the EMTs access to the plaintiff when they arrived at the scene. The relevant differences between these two cases, however, are substantial. First, the Eleventh Circuit found that the physical blows sustained by Mr. King in the arrest met the definition of excessive force, particularly the breaking of Mr. King's ribs, while the Carroll court found that defendants' physical blows and use of pepper spray did not constitute excessive force in the arrest. King, 269 F. App'x at 859-60; Carroll, 207 F.3d at 472. Second, King was denied care by the arresting officer for all of his injuries for several days, whereas plaintiff was only denied care for, at most, two hours. King, 269 F. App'x at 858; (Sec. Am. Compl., ¶¶ 32, 51). Third, and most importantly, Eighth Circuit law requires that plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997). Plaintiff has placed no verified medical evidence into the record that indicates that his health was detrimentally impacted as a result of the two-hour delay in medical treatment. While plaintiff places this inability to produce records solely on the defendants' inability to produce plaintiff's health records from Normandy Medical Center, plaintiff has refused to offer any health records subsequent to his treatment at the Normandy Medical Center that might

16

indicate the detrimental effect caused by any delay in medical treatment. As it is plaintiff's burden of production to provide medical records indicating harm resulted from the delay in treatment and plaintiff has failed to provide them at any point during the many years of this proceeding, summary judgment is appropriate for plaintiff's claims of deliberate indifference.

Nor would medical records without an interpretation by an expert witness be of any value in establishing the long-term medical detrimental effects alleged by the plaintiff, including "poor vision" and "a constant throbbing or jumping" in his left eye. Claims of detrimental effects may not rely on speculation but must be supported by a medically qualified expert where a reasonable juror cannot infer from the evidence whether plaintiff's alleged injuries were the result of the alleged acts of the defendant. *See* Robinson v. Hager, 292 F.3d 560, 564 (8th Cir. 2002). The record is devoid of any such opinion that might indicate that plaintiff's injuries are the result of the pepper spray exposure and not the result of other causes. Even testimony from a medical expert must not be based on speculation but upon reasonable medical certainty or at least probability.

Accordingly, all defendants' motions for summary judgment on the claims of deliberate indifference should be granted.

C. Plaintiff's Claim of § 1985 Conspiracy

Plaintiff's claim is rooted in an alleged conspiracy by the police departments of St. Louis City, St. Louis County and University City, officers thereof, and the City of St. Louis, and any agents thereof, to invidiously target African American male offenders with violent arrests and police brutality (Am. Compl., Doc. # 68, p. 16). The law provides that the officers of each entity defendant act as a single person in the eyes of the law and a governmental entity cannot conspire with itself. Habbab v. Hon, 536 F.3d 963, 969 (8th Cir. 2008); Barstad v. Murray Cnty., 420 F.3d 880, 887 (8th Cir. 2005). Since plaintiff's only remaining claim derives from an alleged act of excessive force committed by members of one police department, while plaintiff was within that department's sole custody, there is no genuine issue of material fact as to whether defendants conspired to use excessive force. Accordingly, plaintiffs conspiracy claim must be denied and dismissed.

D. Plaintiff's Supervisory Liability Claims

A supervisor "may be held individually liable . . . if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." Wever v. Lincoln Cnty.. Neb., 388 F.3d 601, 606 (8th Cir. 2004). To prove this, plaintiff must demonstrate that the police chiefs were "deliberately indifferent to or tacitly authorized the offending acts." Vaughn v. Greene Cnty., Ark., 438 F.3d 845, 851 (8th Cir. 2006). The only remaining claim of deprivation of constitutional rights revolves around St. Louis City Police defendants' use of warm water to clear pepper spray out of plaintiff's eyes and defendants' actions resulting in plaintiff's unnecessarily prolonged exposure to pepper spray. This claim of supervisory liability implicates only Police Chief Ronnie Henderson. In making this claim, plaintiff provides a threadbare assertion of the elements of a cause of action for § 1983 supervisory liability–"failing to train, supervise and control the actions of their subordinates." Plaintiff's supporting documentation is entirely speculative–including two articles detailing an accusation by a U.S. Magistrate Judge that the Board of Police Commissioners of the City of St. Louis turns a "blind eye" to claims of excessive force and raw data indicating the number of complaints made against the St. Louis City Police Department.

Admittedly, showing supervisory liability by such a remote party as the police chief is a difficult proposition. Chief Henderson may be liable for deficient polices for training and supervising police officers where 1) he had notice of the inadequacies, 2) his failure to train in a relevant respect evidences a deliberate indifference to the rights of others, and 3) the alleged deficiency in training procedures actually caused plaintiff's injuries. *See* City of Canton v. Harris, 489 U.S. 378, 390 (1989); Larson by Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996). A defendant may have notice that his training practices are inadequate by two means: 1) where the failure to train "is so likely to result in a violation of constitutional rights that the need for training is patently obvious," Larkin v. St. Louis Hous. Auth. Dev. Corp., 355 F.3d 1114, 1117 (8th Cir. 2004), and 2) where a pattern of misconduct indicates that the defendant's responses to a regularly recurring situation are insufficient to protect constitutional rights. City of Canton v. Harris, 489 U.S. 378, 390 (1989).

Taken in the light most favorable to the plaintiff, the incidents of excessive force cited by plaintiff provide sufficient support to show that Chief Henderson had *general* notice of

18

inadequacies in regard to excessive force associated with police activity, especially since defendants failed to claim or cite any specific facts showing Chief Henderson lacked notice. *See* Rohrbough v. Hall, No. 4:07-cv-00996, 2008 WL 4722742, at *12 (E.D. Mo. 2008). However, plaintiff fails to provide support that any alleged deficiency in training procedures actually caused his specific injuries. An official police policy was in place regarding exposure to pepper spray and the means used to clean pepper spray out of an arrestee's eyes. Plaintiff provides no facts to indicate that Chief Henderson had any notice of a pattern of violations of Special Order § V, 92-S-12, nor are there any facts on the record indicating that he failed to correct such violations, if they existed. *See* Vaughn v. Greene Cnty., 438 F.3d 845, 851 (8th Cir. 2006). Plaintiff only makes claims regarding the detaining officers' failures to follow the policy in that instance. Indeed, plaintiff not only refuses to argue that the Special Order is inadequate but he utilizes it as a basis for arguing, successfully, that his claim of prolonged and exacerbated exposure to pepper spray sufficiently constitutes excessive force to survive a summary judgment motion. Thus, the Special Order, if followed by the officers at the scene, would have prevented plaintiff's sole remaining claim of excessive force. The facts taken in a light most favorable to the plaintiff can only support the idea that plaintiff's harms may have been the result of a failure of officers to adhere to clear directives implemented by police supervisors. *Cf.* Wever v. Lincoln Cnty., 388 F.3d 601, 608, 609 (8th Cir. 2004) (noting that jail policy, even if implemented, would not have protected a plaintiff claiming supervisory liability). Plaintiff's remaining bare assertions in his amended complaint are insufficient to support a claim of supervisory liability to defeat the motion for summary judgment. *See* Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Accordingly, defendants' motion for summary judgment on this claim should be granted.

E. Plaintiff's Requests for Additional Discovery and Miscellanea

Plaintiff's request for the production of documents (Doc. # 244) entails a request for documentation surrounding the search for plaintiff's medical records while treated at Normandy Medical Center and a request for information associated with various investigations of the Board of St. Louis Police Commissioners, information involving the membership of various police detachments, requests for police policies, and certain information regarding the racial composition and legal representation of those bringing complaints against the police departments of St. Louis County, St. Louis City, and University City. Plaintiff's motions to compel discovery

19

(Docs. # 250, 258) ask the court to compel the production of these same documents. Since the only remaining claim involves Officers Dolan, Johnson, and Leyshock's claimed failure to treat plaintiff's exposure to pepper spray properly, the relevant scope of discovery has narrowed considerably. Plaintiff has a copy of St. Louis City Police written policy on the treatment of those exposed to pepper spray. Neither party, however, has access to the medical records from Normandy Medical Center describing the scope of plaintiff's claimed injuries and exposure. This is the only remaining documentation that plaintiff requests in his motions to compel which is possibly germane to this proceeding. Thus, the only relevant discovery requests remaining are described in paragraphs 9-12 of plaintiff's first motion to compel (Doc. # 250). Plaintiff requests all communications used in searching for his health records. Such a request is premised on plaintiff's desire to see all of the individuals contacted by St. Louis County in order to ascertain the scope of the county's search. By the report provided by the county on the names, contact information, and results of their inquiry (Doc. # 256), it is clear that their search was sufficiently thorough. In addition, I have previously discussed the insufficient foundation presented by bare medical records. Accordingly, plaintiff's motions to compel should be denied in full.

Procedural motions by defendants St. Louis City Police Department and Brian Dolan, Harry Hegger, Ronnie Henderson, Charles Johnson, and Jerry Leyshock to extend time to respond to plaintiff's motions to compel (Docs. # 252, 253) should be denied as moot. These defendants have already filed a response. Defendants' motion to respond out of time to plaintiff's motion for reconsideration (Doc. # 261) should be granted.

Plaintiff reiterated his request that this court appoint counsel for him on the grounds that ex parte motions were filed by the University City defendants and that the claim of pattern and practice of § 1983 discrimination is complex–both factors warranting appointed representation for the plaintiff (Docs. # 240, 257). Since I have dismissed the pattern and practice claim, and since University City defendants did not file any motion subsequent to my memorandum and order of March 16, 2010, I find that the plaintiff's basis for the appointment of counsel continues to lack merit and should be denied.

Defendants' arguments that plaintiff's claims should be dismissed for lack of adhering to the Rules of the Court of the Eastern District of Missouri should also be denied. "Pleadings and other documents filed by pro se litigants should be treated with a degree of indulgence, in order

20

to avoid a meritorious claim's [sic] being lost through inadvertence or misunderstanding." Williams v. Carter, 10 F.3d 563, 567 (8th Cir. 1993). Accordingly, only plaintiff's claim of excessive force resulting from prolonged and exacerbated exposure to pepper spray may proceed.

## CONCLUSION

As noted above, the City of St. Louis, all University City defendants, all St. Louis County defendants, and Police Chief Ronnie Henderson are entitled to summary judgment in their favor on plaintiff's claims. The sole remaining claim is against St. Louis City Police Officers Brian Dolan, Charles Johnson and Jerry Leyshock for the use of excessive force in prolonging plaintiff's exposure to pepper spray and in exacerbating plaintiff's exposure by using warm water to attempt to flush plaintiff's eyes allegedly in direct contravention of police policy.

Based upon the foregoing,

IT IS ORDERED:

1. Defendants Michael Sisco, Keith Coleman, and Michael McCann's motion to reconsider this court's denial of summary judgment disposing of plaintiff's claims against them (Doc. # 229) is granted.

2. Defendants Michael Sisco, Keith Coleman, and Michael McCann's motions for summary judgment (Docs. # 190, 193) are granted in full.

3. Defendants Brian Dolan, Charles Johnson, Jerry Leyshock, Harry Hegger, Ronnie Henderson, and the St. Louis Board of Police Commissioners motion to grant summary judgment in their favor on all of plaintiff's claims against them (Doc. # 230) is granted in part and denied in part as set forth above.

4. Plaintiff's motion to reconsider this court's grant of summary judgment in favor of all University City defendants (Doc. # 232) is denied.

5. Plaintiff's motion to reconsider this court's grant of summary judgment in favor of defendant St. Louis City (Doc. # 233) is denied.

6. Plaintiff's request to reconsider this court's denial of plaintiff's motion to appoint counsel (Doc. # 240) is denied.

7. Plaintiff's motion to produce documents (Doc. # 244) is denied.

8. Plaintiff's motions to compel discovery (Docs. # 250, 258) are denied.

21

9. Plaintiff's motion to reconsider this court's determinations on the facts and on plaintiff's discovery requests (Doc. # 257) is denied.

10. The motions of defendants St. Louis City Police Department and Brian Dolan, Harry, Hegger, Ronnie Henderson, Charles Johnson, and Jerry Leyshock to extend time to respond to plaintiff's motions to compel (Docs. # 252, 253) are denied.

11. The motion of defendants St. Louis City Police Department and Brian Dolan, Harry, Hegger, Ronnie Henderson, Charles Johnson, and Jerry Leyshock to respond out of time to plaintiff's motion for reconsideration (Doc. # 261) is granted.

12. The clerk shall not accept for filing and no party shall file any further motions for reconsideration without the court first authorizing any such filing.

Dated this 30th day of September, 2010.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

22