UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MISSOURI

EASTERN DIVISION

| | | |
|---|---|---|
| GERALD R. CARROLL, | * | 4:00-CV-00864-UNA |
| Plaintiff, | * | |
| -vs- | * | MEMORANDUM OPINION AND ORDER |
| BRIAN DOLAN, JERRY LEYSHOCK, CHARLES JOHNSON, St. Louis City Police Officers and Detectives in their Official and Individual Capacities[1], | * | |
| Defendants. | * | |

Plaintiff, a prisoner at the United States Penitentiary in Greenville, Illinois, instituted this action pursuant to 42 U.S.C. §§ 1983 and 1985, seeking damages for alleged constitutional violations in conjunction with his arrest on July 30, 1998, for armed robbery. Plaintiff was subsequently convicted of that crime and his conviction was affirmed on appeal. United States v. Carroll, 207 F.3d 465 (8th Cir. 2000).

In the order of September 30, 2011, (Doc. # 263) this court granted motions for summary judgment against nearly all of plaintiff's claims. Plaintiff's only remaining claim is that defendants Dolan, Leyshock and Johnson used excessive force, in deprivation of his rights per 42 U.S.C. § 1983, by prolonging his exposure to pepper spray incident to his arrest.

Plaintiff alleged that defendants failed to use cool water to promptly flush his eyes after he was in custody. These remaining defendants filed a motion to supplement (Doc. # 265) their prior motion for summary judgment, which this court granted in part and denied in part in its previous order. Defendants claim that, regardless of whether plaintiff was subjected to

---

[1]The caption is amended to reflect the dismissal of parties as provided in Docs. # 90, 226, and 263.

excessive force, defendants are protected by qualified immunity, an affirmative defense they failed to raise. Plaintiff filed a motion previously to extend the deadline to respond (Doc. # 266) and filed a memo. (Doc. # 267). Plaintiff also filed a motion to deny defendants' motion for leave to supplement (Doc. #268) and a statement of material facts (Doc. # 269). Plaintiff then brought a motion to reconsider, for the third and second time, respectively, this court's grant of the motions of St. Louis City Police Department for summary judgment (Doc. # 270). Defendants filed a reply (Doc. # 271), a response to plaintiff's motion to deny (Doc. # 272), and a competing statement of material facts (Doc. # 273). Plaintiff filed a motion for leave to file his motion for reconsideration of this court's grant of summary judgment (Doc. # 274). Plaintiff filed a request for leave to conduct further discovery, citing Fed. R. Civ. P. 26 & 56(f) (Doc. # 275). Plaintiff also filed a declaration and affidavit in support of his motion to deny defendants' motion for summary judgment (Doc. # 276) and a response to defendants' statement of facts (Doc. # 277).

**DECISION**

**1. Motions to Reconsider**

After two warnings, plaintiff has again filed a motion to reconsider. Defendants, with the assistance of sophisticated counsel, merely disguise their motion to reconsider using the convention of a motion to supplement. Again, both parties chose to ignore my admonitions on the futile and wasteful use of motions to reconsider. (Docs. ## 174, 263). This court has nonetheless analyzed these motions to reconsider.

"Aggrieved parties in bench trials should not file motions labeled 'motion for reconsideration' in federal district court. *The Federal Rules of Civil Procedure do not provide for such a motion.*" In re Trout, 984 F.2d 977, 978-79 (8th Cir. 1993) (emphasis in original). Instead, parties must properly designate such motions as made under a particular rule authorizing the motion. *See id.* Both plaintiff and defendants failed to gird their "motion to reconsider" and "motion for leave to file supplemental motion" with any reference to a Federal Rule of Civil Procedure that would permit the filings. Even still, if a party brought a "motion to reconsider" under a valid interpretation of the Federal Rules, "[s]uch motions are frequently a waste of time for both the parties and the trial court." Wilkins v. Hartford Life & Accident Ins. Co., 299 F.3d

945, 948 (8th Cir. 2002). If any party brings a motion to reconsider or like motion without citing a rule authorizing the motion within the Federal Rules, I will deny it outright.

## 2. Summary Judgment

Summary judgment is proper if, "after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." Hayek v. City of St. Paul, 488 F.3d 1049, 1054 (8th Cir. 2007). The moving party "bears the burden of showing both the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law." Nyari v. Napolitano, 562 F.3d 916, 920 (8th Cir. 2009) (*quoting* Singletary v. Mo. Dep't of Corr., 423 F.3d 886, 890 (8th Cir. 2005)). Additionally, a nonmoving party's failure to establish any element essential to his or her claim, to which he or she has the burden of proof, "necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Landon v. Nw. Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995).

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stores, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotations and citations omitted). Plaintiff and defendants have filed affidavits in support of their respective motions.

## 3. Excessive Force and 42 U.S.C. § 1983

3

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Cook v. City of Bella Villa, 582 F.3d 840, 848–49 (8th Cir. 2009) (citation omitted). Plaintiff's civil right at issue is his right to be free from unreasonable seizures of his person, enshrined by the Fourth Amendment. Moore v. Indehar, 514 F.3d 756, 759 (8th Cir. 2008). "The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." Guite v. Wright, 147 F.3d 747, 750 (8th Cir. 1998). "A section 1983 action is supported when a police officer violates this constitutional right." Id. (citation omitted). This court must evaluate plaintiff's claim of excessive force under the reasonableness standard of the Fourth Amendment. Montoya v. City of Flandreau, 669 F.3d 867, 870 (8th Cir. 2012). The standard tests "whether the amount of force used was objectively reasonable under the particular circumstances." Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009). This, in turn, is determined "by balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Montoya, 669 F.3d at 871 (citation omitted). Such a balance requires considering "the totality of the circumstances, including the severity of the crime, the danger the suspect poses to the officer or others, and whether the suspect is actively resisting arrest or attempting to flee." City of Bella Villa, 582 F.3d at 849. The degree of injury suffered, to the extent it shows the amount and type of force used, is relevant to ascertaining that balance as well. Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011). Reasonableness should not be analyzed with the 20/20 vision of hindsight in the peace of the judge's chambers, but rather by the perspective of a reasonable officer on the scene. *See* Graham v. Connor, 490 U.S. 386, 396 (1989).

**4. Plaintiff's Arguments to Reconsider Summary Judgment in Favor of St. Louis City Police Department**

### A. Plaintiff's Motion to Reconsider

The only new argument that plaintiff makes against the St. Louis City Police Department ("the Department") is that a portion of the Department policy, specifically the "exception"

4

stipulated in Special Order § V, 92-S-12.C, is a policy that directly caused plaintiff's prolonged exposure to pepper spray. This exposure is the sole basis for plaintiff's excessive force claim that survived summary judgment and is thus his only means of obtaining relief under 42 U.S.C. § 1983. The theory that prolonged exposure to pepper spray is excessive force comes from LaLonde v. Cnty of Riverside, 204 F.3d 947, 961 (9th Cir. 2000), where the court held that "any reasonable officer would know that a continued use of the [pepper spray] or a refusal without cause to alleviate its harmful effects constitutes excessive force." Id. The court held that allowing a plaintiff to suffer the effects of pepper spray after he had fully surrendered and was under police control "constituted excessive force" whether plaintiff's face burned for "ten minutes or half an hour" after having been detained. Id. at 960 n.18.

Plaintiff's claim of municipal or organizational liability is not viable "to the extent [it is] based on an alleged failure properly [sic] to train, monitor, or supervise St. Louis police officers." Ford v. St. Louis Metro. Towing, L.C., No. 4:09-cv-0512, 2010 WL 618491, at *18 (E.D. Mo. Feb. 18, 2010). *Respondeat superior* is an unrecognized theory for imputing liability under 42 U.S.C. § 1983. Beene v. City of St. Louis, 2009 WL 5103268, at *3 (citing Hughes v. Stottlemyre, 454 F.3d 791, 798 (8th Cir. 2006)). Thus, proper causation linking municipal defendants to the excessive force claimed "can be established by direct personal participation in the deprivation or by participation setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional injuries on third parties." Hughes, 454 F.3d at 798 (citing Darnell v. Ford, 903 F.2d 556, 562 (8th Cir. 1990)). In other words, municipal defendants' liability is conditioned upon proof that they permitted, encouraged, or tolerated a continuing, widespread, and persistent pattern of unconstitutional conduct. Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690–91 (1978); Moyle v. Anderson, 571 F.3d 814, 817 (8th Cir. 2009). A claim against local government entities is sustainable only where a constitutional violation has been committed pursuant to an official custom, policy, or practice. Johnson v. Blaukat, 453 F.3d 1108, 1114 (8th Cir. 2006). "To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action." Harris v. City of Pagedale, 821 F.2d 499, 504 (8th

5

Cir. 1987). Since plaintiff failed to aver facts supporting the direct personal participation of the Department's leadership in the excessive force alleged, plaintiff must provide some fact that, taken in a light most favorable, would make a reasonable factfinder believe there is a genuine issue as to whether the Department set in motion a series of acts by others that they knew would cause others to inflict the constitutional injury plaintiff allegedly sustained.

Plaintiff's new assertion regarding the rule exception fails to show that an official Department policy could be responsible for the alleged excessive force. The exception plaintiff cites in the police rules reads: "The person against whom pepper mace was used will be taken to the hospital only when other force besides the pepper mace was used" (emphasis in original). Plaintiff contends that such a policy, in effect, motivated defendants to refuse immediate, proper treatment as required by the Fourth Amendment. Plaintiff, however, fails to cite other portions of the policy, specifically Special Order § V, 92-S-12.D (Doc. # 247, Ex. B), which provides that an individual:

> 1. [W]ill be treated for exposure [to pepper spray] as soon as he/she becomes manageable according to the following procedures:
>
> > a. The exposed individual should be taken to a secure location and permitted to thoroughly wash his/her face and eyes with cold water for several minutes to neutralize the effects of the pepper mace. UNDER NO CIRCUMSTANCES WILL WARM OR HOT WATER BE USED, SINCE THIS WILL INTENSIFY THE SYMPTOMS. If water is not available, the person should be exposed to fresh air.
>
> . . .
>
> 3. EMS should be called immediately for medical assistance, if an individual exposed to pepper mace exhibits breathing difficulties, blistering, or if the symptoms of pepper mace exposure persist.

(Emphasis in original).

When read together, these provisions do not prove that the Department tolerated, condoned, or sought the alleged harm plaintiff sustained from exposure to pepper spray. Plaintiff is unable to show that this procedure brought about plaintiff's alleged exposure to pepper spray. Indeed, the basis of plaintiff's claims of alleged prolonged exposure comprises only two elements—(1) defendant Leyshock used warm water to irrigate his eyes (both parties

6

acknowledged that Leyshock irrigated plaintiff's eyes after exposure), and (2) EMS personnel were turned away from the scene. According to the Special Order, neither of these two alleged situations should have occurred. The Special Order required cold water to be used to clean off the pepper spray. It also required an EMS to be called "if the symptoms of pepper mace exposure persist." Only where an official policy is itself unconstitutional or directs employees to take unconstitutional action may this court accept plaintiff's statement of the policy as sufficient proof to establish § 1983 municipal liability. *See* Szabla v. City of Brooklyn Park, 486 F.3d 385, 389–90 (8th Cir. 2007). Since the policy does not appear to be unconstitutional, namely to direct employees to take unconstitutional actions, and to have played any causal role in the alleged harm described by plaintiff, plaintiff's argument does not cause this court to reconsider the grant of summary judgment in favor of the Department.

### B. Plaintiff's Motion for Additional Discovery

Plaintiff avers in his declaration and affidavit that there were a very high number of complaints against the Department from 1990-2000 and that further discovery is necessary to provide sufficient detail as to why those complaints were made and whether any complaints arose from a failure to follow the Department's policy on pepper spray exposure. Such information, according to plaintiff, could establish that the Department tolerated violations of its pepper spray exposure rule through custom. Indeed, plaintiff is correct that courts have held municipalities liable when the plaintiffs have produced evidence of prior complaints sufficient to demonstrate that the municipalities and their officials ignored police misconduct. *See, e.g.*, Parrish v. Luckie, 963 F.2d 201, 204–05 (8th Cir. 1992). Plaintiff admits that he received information that satisfied his initial request for discovery, namely the names and addresses of persons making complaints against St. Louis City police in the line of duty during 1990-2000. Now, plaintiff argues he seeks more specific information about the "type of complaint," the "resolution of the complaint," the "race of the person making the complaint," and the "name of the police officer involved" which the Department fails to answer. Plaintiff has contended in prior filings that the Department did not answer his discovery requests for these additional details (see Docs. ## 235, 200, 182).

Plaintiff's arguments necessarily require this court to revisit its Order of February 26, 2010, where the court denied plaintiff's motion to compel this evidence, and its Order of

7

September 30, 2011, where the court granted the Department's motion for summary judgment. In denying plaintiff's motion to compel, this court found that plaintiff's requests to compel, particularly Docs. ## 172 and 214, were cumulative of prior requests made by the plaintiff to obtain the names and addresses of persons making complaints against the Department. The court found that these requests were satisfied by the Department's filings. In granting the Department's motion for summary judgment, the court found that there were no facts (beyond plaintiff's bare assertions) that the Department tolerated a custom to violate its rules on pepper spray exposure. Plaintiff now refines his request, however, to obtain data that may show that the Department had a custom during the time in question that allowed police officers to prolong arrestee's exposure to pepper spray in the face of contrary written policy.

Plaintiff's claim rests not upon race or upon the police officer involved. Plaintiff's claim is that, in the face of a clear policy against prolonged exposure, the Department's custom permitted such exposure. That may be shown if the Department ignored past examples of this alleged misconduct. The documents the Department sent in response to plaintiff's discovery request do not specify what incidents of excessive force arise out of allegations of prolonged pepper spray exposure (Doc. # 235, Exs. A–C). However, the Department has otherwise complied with the relevant portion of plaintiff's prior requests, including providing (1) the "type of complaint," as the information provided to defendant contains categories broken down by charge type, and a list of names and addresses of all individuals specifically complaining of excessive force (Doc. # 235, Exs. B & C) and (2) the "resolution of the complaints," since the Department provided data on which claims were sustained, withdrawn, or exonerated, and the disciplinary actions that followed (Doc. # 235, Ex. B). Any sanction against the Department for failure to provide this information would be inappropriate. Plaintiff failed to clarify this request until after summary judgment was granted in favor of the Department.

The Department should comply with the relevant portions of plaintiff's request by providing statistics, in a similar manner as provided in Doc. # 235, Ex. B, on the complaints of excessive force resulting from alleged prolonged exposure to pepper spray between 1990 and 2000, the outcomes of those complaints, and the disciplinary action taken, if any, associated with those complaints. The other data sets plaintiff requests are not relevant to his only potentially valid theory for municipal liability—that the Department's custom permitted violations of the

written policy on pepper spray exposure. *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Evid. 401. This relevant evidence is not directly tied to individual officers, but is instead pure statistics. This fact should sufficiently protect the integrity of Internal Affairs records and the privacy of individual officers. Indeed, the Department compiled similar statistics already by providing plaintiff with the various charge categories for all complaints filed against the Department in a given year. Defendant's motion for reconsideration of the grant of summary judgment to the Department should be granted in order to give plaintiff an opportunity to properly support an assertion of fact. *See* Fed. R. Civ. P. 56(e)(1). The Department may renew its motion for summary judgment with a simple brief once it provides this information.

**5. Defendants' Motion for Leave to File Supplemental Motion for Summary Judgment**

Qualified immunity protects officers from liability in a § 1983 case "unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009). To withstand a motion for summary judgment on qualified immunity grounds, plaintiff must: "(1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated plaintiff's clearly established right." Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996). Plaintiff states that defendants used excessive force, in violation of the Fourth Amendment, by failing to treat plaintiff and unnecessarily prolonging his exposure to the pepper spray used to subdue him. The right of individuals who are safely in custody to not suffer through prolonged exposure to pepper spray is clearly established, as noted above in LaLonde. Thus, defendants' motion becomes a fact-based inquiry—specifically whether there is a genuine issue of fact that a reasonable official in defendants' position would have known their conduct violated plaintiff's rights.

Defendants provide affidavits from emergency medical technicians ("EMTs") Jeffry Rehm and Brad Williamson who were allegedly present at the scene of plaintiff's custody. They state that they irrigated plaintiff's eyes at the scene with sterile water and used a clean towel to wipe away the pepper spray. Defendants contend that they relied upon the EMTs' expert opinions at the scene when they decided to transport plaintiff to the hospital by means other than an immediate ambulance delivery. Defendants seem to argue that in light of these

9

affidavits—coupled with the fact that plaintiff continues to rely only upon his assertion of events without extraneous evidence, *per se*, to rely upon—"the factual context renders respondents' claims implausible." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Thus, according to defendants, plaintiff needs to provide factual support in addition to his bare assertions in order to survive a renewed motion for summary judgment based upon qualified immunity.

Defendants apply this point of law incorrectly. As noted above, plaintiff need only raise a genuine issue of material fact that a reasonable official would have known that the alleged conduct violated plaintiff's rights. Matsushita involved the court invoking a heightened pleading standard (plausibility) for claims of conspiracy under the Sherman Act and is thus distinguishable from this case. Even if Matsushita was applicable to this proceeding, however, affidavits provided by defendants do not place plaintiff's version of events into the realm of implausibility as envisioned by Matsushita. What instead constitutes implausibility under Matsushita is when a party bases its argument against summary judgment on actions that, if taken at the time, would have been so contrary to the party's self interest that it would have been implausible for him to have acted in that manner. *See* 475 U.S. at 587. Only then would the nonmoving party need to assert additional factual support. Id. This claim, however, simply involves dueling assertions of fact. It is not implausible that one side is telling more of the truth than the other. That is indeed a common characteristic of our adversarial justice system. It should be up to a factfinder to decide. Moreover, affiants' contentions are not above reproach. The sequence of events spelled out by EMTs Rehm and Williamson seem to be absent, perhaps even contradicted, in the arrest record provided by the Department. The report, on page 4, provides that "Gerald C. refused to be examined" at the scene by Rehm and Williamson (Doc. # 265, Ex. 6). Additionally, the affiants do not state in their affidavits that they informed police at the scene of plaintiff's fitness to be transported to the hospital by means other than an ambulance. Why, too, would defendant Leyshock need to irrigate plaintiff's eyes if the EMTs already treated plaintiff, or vice-versa? This evidence does not cast sufficient doubt to place plaintiff's claims into the realm of implausibility. Thus, plaintiff's assertions are sufficient to maintain the existence of genuine issues of material fact.

Defendants also argue that the facts alleged by plaintiff, taken in a light most favorable to plaintiff, do not amount to conduct that a reasonable officer would have known violated plaintiff's rights. They note that plaintiff may have been under the influence of some intoxicant at the time he was arrested, and thus his ability to determine the temperature of the water used to wash out his eyes may have been impacted. They also state that this court, by denying this motion, would require law enforcement to draw the line on "what type of water is too warm that a reasonable officer should know that to administer such water would constitute excessive force." The defendants seem to imply that such nit-picking runs contrary to the "totality of the circumstances" analysis required under the reasonability test of the Fourth Amendment. As noted above, this analysis requires this court to appreciate the circumstances at the scene from the perspective of a reasonable officer—the severity of the crime at issue, the immediate threat posed by the suspect to the safety of the officer or others, and whether the suspect is actively resisting or attempting to evade arrest by flight. Smith v. Kan. City Police Dep't, 586 F.3d 576, 581 (8th Cir. 2009) (citation omitted).

If this case were closer, defendants may have a valid argument here. The pepper spray was likely necessary to initially subdue plaintiff when he allegedly used physical force to prevent his arrest. However, much like the plaintiff in Lalonde, 204 F.3d at 960, plaintiff alleges that after his arrest, he was safely within the custody of law enforcement for a long period of time before receiving treatment for pepper spray exposure at the hospital. Defendants allege no facts indicating that during this two-hour period, "tense, uncertain, and rapidly evolving" circumstances were occurring, nor did they allege that "split-second judgments about the amount of force that is necessary in a particular situation" were made by law enforcement during this period. While defendants contend that violations of internal police policy are not *per se* violations of plaintiff's rights, citing Newman v. Holmes, 122 F.3d 650, 653 (8th Cir. 1997) (involving prison policies and the Eighth Amendment), such policies within police rules place officers on notice that certain behavior is proscribed. That this behavior corresponds to a clear violation of plaintiff's constitutional rights ensures that a reasonable officer should have been aware of the violation. As written, the Special Order greatly emphasizes the fact that the water used should be "cold" and that "UNDER NO CIRCUMSTANCES WILL WARM OR HOT WATER BE USED, SINCE THIS WILL INTENSIFY THE SYMPTOMS" (emphasis in

11

original). Furthermore, requiring defendants to adhere to their own rules does not task them with the onerous burden of determining whether water is warm or cold. If defendants were unable to secure cold water for this purpose, then they were to obtain EMS support to deal with such prolonged pepper spray exposure and expose plaintiff to fresh air, according to police rules. There is no requirement that ice water be used. Water is commonly known to come from the tap as cold or hot. Such are the actions of a reasonable officer. Indeed, defendants may have done these things, but since these are contentious facts, it should be a factfinder's role to make that determination.

Assuming that defendants are otherwise eligible for qualified immunity, plaintiff is able to sufficiently assert that genuine issues of material fact exist that defendants are not entitled to qualified immunity as a matter of law. Defendants' motion for leave to file a supplement to a renewed motion for summary judgment should be denied, since the theory defendants seek to supplement would be insufficient to meet their burden to support summary judgment.

### 6. Plaintiff's Motion for Leave to Conduct Further Discovery

In response to defendants' affidavits that EMTs treated plaintiff and suggestions by defendants that the EMTs cleared plaintiff for a non-ambulance transport to the hospital, plaintiff seeks documentation, the absence of which would allegedly disprove defendants' sequence of events. As this court noted previously, the proper means of seeking discovery is to first request the information from the opposing party rather than caption the request as a motion to the court. *See* Fed. R. Civ. P. 37(a)(1). The motion should be denied.

### 7. Motions to Withdraw as Attorney

Michael Hughes filed a motion to withdraw (Doc. # 278) as counsel for the St. Louis City defendants. Those defendants have not filed an objection to this motion and have the services of other attorneys. This motion should be granted.

Based upon the foregoing,

IT IS ORDERED:

1. The motion of defendants Brian Dolan, Charles Johnson, and Jerry Leyshock for leave to file a supplemental motion for summary judgment (Doc. # 265) is denied.

2. Plaintiff's motion for extension of time to respond to defendants' supplemental motion for summary judgment (Doc. # 266) is denied as moot.

3. Plaintiff's motion to deny defendants' motion for leave to supplement (Doc. # 267) is denied as moot.

3. Plaintiff's motion to reconsider this court's grant of summary judgment in favor of defendants St. Louis City and St. Louis Police Department (Doc. # 270) is denied.

4. Plaintiff's motion for leave to file a motion for reconsideration of the grant of summary judgment to the St. Louis Police Department (Doc. # 274) is granted. The St. Louis Police Department is ordered to comply with plaintiff's request for the number of complaints of excessive force resulting from alleged prolonged exposure to pepper spray between 1990 and 2000, the outcomes of those complaints, and the disciplinary action taken, if any, associated with those complaints. Plaintiff's remaining requests for additional discovery are denied. The court vacates, in part, its Orders of September 30, 2011 (Doc. # 263), and February 26, 2010 (Doc. # 226), only insofar as necessary to accommodate this request.

5. Plaintiff's request for leave to conduct further discovery (Doc. # 275) is denied.

6. Michael Hughes motion to withdraw (Doc. # 278) as counsel for the St. Louis City defendants is granted.

Dated this 3rd day of July, 2012.

BY THE COURT:

*Charles B. Kornmann*

CHARLES B. KORNMANN
United States District Judge